UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JAYMENE L.,                         )
                                    )
    Plaintiff               )
                                    )
v.                                  )    1:17-cv-00425-GZS
                                    )
SOCIAL SECURITY ADMINISTRATION      )
COMMISSIONER,                       )
                                    )
    Defendant               )

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe migraine headaches, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

## The Administrative Findings

The Commissioner's final decision is the September 27, 2016 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), the Acting Commissioner's final decision is the ALJ Decision.

claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe migraines. (ALJ Decision ¶ 2.) Based on the migraines, the ALJ found that Plaintiff's work capacity is reduced, but that she retains the residual functional capacity (RFC) to perform light work consisting of simple, routine tasks, not at a production pace, with no more than occasional public interaction, subject to certain postural and environmental limitations. (*Id.* ¶ 4.) Given this RFC, Plaintiff's vocational profile, and the testimony of a vocational expert, the ALJ determined that there are jobs in the national economy that Plaintiff can perform and that Plaintiff, therefore, was not under a disability through the date of the ALJ's decision. (*Id.* ¶¶ 9 – 10.)

## Standard of Review

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff contends the ALJ's finding that she has the residual functional capacity for

full-time work is not supported by substantial evidence on the record and that the frequency and intensity of her migraines would cause her to miss work too often for any employer. Plaintiff more specifically argues that the ALJ's decision to discount the opinion of a treating source, Elisa Thompson, M.D., was not reasonable, and no other medical opinion of record supports the ALJ's RFC finding.

Plaintiff has a history of migraine headaches, but her symptoms allegedly increased in frequency and intensity after Plaintiff experienced severe head trauma in 2012. (Redington Neurology, Ex. 5F:1, ECF No. 9-7.) Plaintiff filed an application for SSI benefits on May 29, 2014, alleging onset of disability in September 2012. (ALJ Decision at 1.)

At an August 2014 neurologic consult, Plaintiff reported weekly migraines,[2] but also the ability to "keep it at bay" if able to "catch the migraine with Zomig," a brand name triptan medication. (Ex. 5F:1.) The consult report reflects that Plaintiff's migraine symptoms involve "flashing half moon in the left eye, nausea, vomiting, phonophobia, photophobia, and osmophobia." (*Id.*) Karissa Fahnestock, PA, noted an increase in the dosage of Topamax/Topiramate, which "should have a more pronounced and positive effect;" prescribed Zomig nasal spray; and introduced a suppository, Promethazine, to address nausea symptoms, as needed. (*Id.* at 4.) During a March 2015 office visit with PA Fahnestock, Plaintiff reported that she "continues to treat [migraines] successfully with Zomig and her suppository." (Ex. 14F:1.) Plaintiff also reported experiencing "headache

---

[2] Plaintiff also reported experiencing chronic daily headaches that do not have the intensity of a migraine headache.

with nausea" the morning of her visit, and that she was "waiting for her analgesic to kick in." (*Id.*) PA Fahnestock nevertheless described Plaintiff as "alert and oriented x3," with "normal attention span and ability to concentrate." (*Id.* at 2.) PA Fahnestock further supplemented the medication list with a prescription of "nightly nortriptyline." (*Id.* at 3.)

On June 4, 2015, Plaintiff's primary care provider, Dr. Thompson, examined Plaintiff, and as to Plaintiff's "headache, chronic," recommended that Plaintiff "continue topiramate and [follow up] with neuro." (Ex. 16F:8.) Dr. Thompson also noted "no changes required" with respect to migraine headaches. (*Id.* at 6.)

On April 8, 2015, Dr. Thompson assessed Plaintiff's RFC to be considerably more limited than the ALJ found. (Ex. 10F.) For example, Dr. Thompson determined that Plaintiff can only walk about 2 hours and sit about 3 hours in an 8-hour workday, that she must change her position approximately every half hour, will need to lie down 2 or 3 times during a work shift, and would be absent from work more than 3 times per month. (R. 351 – 54.) As to the source of the limitations, Dr. Thompson wrote, "ongoing chronic daily headaches exacerbated by various movements; answers based on patient self-report." (R. 352.)

In a December 2015 neurology record, PA Fahnestock noted Plaintiff's report that "the predominance of her headaches are associated catamenially," "good effect with the Zomig and Phenergan still," "the nausea tends to be the most disabling," and "continued improvement in her pattern since starting" nightly nortriptyline and twice a day topiramate. (Ex. 13F:4.) During an office visit on June 9, 2016, with PA Fahnestock, Plaintiff reported "not … much change to the frequency of her headaches," greater intensity "when they do

4

occur now," and "usually one headache a month of this severity where nothing really seems to help." (*Id.* at 1.)

Disability Determination Services denied Plaintiff's claim at the initial stage, in August 2014, and upon reconsideration, in December 2014. Russell Phillips, Ph.D., and Richard Chamberlin, M.D., reviewed the record as part of the initial denial. (Ex. 1A.) The record at the time included the report of Plaintiff's initial neurology consult. (Ex. 5F.) Dr. Phillips concluded the record did not disclose a severe "mental impairment," but explained that "pain … may or may not impose additional non-exertional limitations which would be addressed elsewhere in the file." (*Id.* at 6.) Dr. Chamberlin separately assessed Plaintiff's physical RFC. Although he noted the migraine headaches most recently evaluated by a neurologist, Dr. Chamberlin concluded there was "[n]o severe physical impairment." (*Id.* at 71.) David Houston, Ph.D., and Leah Holly, D.O., reviewed the record at the reconsideration stage. (Ex. 4A.) Dr. Houston found only mild, non-severe limitations, but again noted that "pain … may or may not impose additional non-exertional limitations which would be addressed elsewhere in the file." (*Id.* at 6 – 7.)

As to Plaintiff's somatic symptoms, Dr. Holly concluded that Plaintiff has a severe condition, which she characterized as "the sequelae of head trauma," and she opined that Plaintiff must avoid all exposure to ladders, ropes, scaffolds, heights and other hazards, due to vertigo/dizziness. (*Id.* at 7 – 9.) Dr. Holly reviewed documents that included the report of Plaintiff's consultation with PA Fahnestock on September 4, 2014. (Ex. 6F.) In that report, PA Fahnestock noted that Plaintiff presented with a headache, stated she was still having one migraine (typically) per week, but that her prescription of internasal Zomig

5

was limiting the duration to 2 – 3 hours, and the suppository was managing her nausea. (R. 328.) PA Fahnestock found Plaintiff alert and oriented with normal attention span and ability to concentrate. (R. 330.)

In her assessment of the medical evidence, the ALJ gave "little weight" to Dr. Thompson's opinion. The ALJ noted that Dr. Thompson acknowledged that her completion of the RFC assessment form was "based on the claimant's self-reports," which, in the ALJ's view, "greatly diminished" the weight of the findings. (R. 16.) The ALJ also concluded the significance of the findings was diminished because, as reflected by Dr. Thompson's referral to neurology for treatment, Dr. Thompson was not the primary provider for Plaintiff's migraines. (*Id.*) The ALJ nevertheless credited, to some degree, Dr. Thompson's view (and the view of Dr. Holly) that the assessment of Plaintiff's capacity should include some limitations "to reflect the potential triggers and activities that may exacerbate migraine symptoms." (*Id.*) Concerning Dr. Holly's less restrictive assessment of Plaintiff's RFC, the ALJ explained that "[t]he record received at the hearing level, particularly updated neurology treatment notes, suggest the claimant has greater limitations with exertional, non-exertional, and environmental factors" than found by Dr. Holly. (*Id.* at 16 – 17.)

The ALJ also gave weight to Plaintiff's subjective reports and Plaintiff's activity level. The ALJ noted that the record evidence includes reports of significant improvement in symptoms through the course of medication management, which reports include a more recent report that the severe symptoms coincide with monthly migraines, not with the chronic headaches, and a report that Plaintiff was able "to perform a range of work-related

functions," including assisting with a friend's cleaning business Plaintiff had hoped to take over at one point. (R. 18.)

Plaintiff contends the ALJ's analysis is flawed because Dr. Holly, upon whose opinion the ALJ relies in part, did not have the most recent records from the neurological consultation with PA Fahnestock; Dr. Thompson was in fact involved in the treatment of migraines and remained informed of the medication management implemented under PA Fahnestock; the treatment records reflect her consistent report of migraines occuring more frequently than monthly; the lack of objective findings in support of the migraine condition should not be determinative of her claim; and Plaintiff's report of episodic symptoms is consistent with her ability to engage in work and daily living activities when she is not experiencing severe migraine symptoms, but given the frequency and severity of the symptoms, she cannot be employed on a full-time basis.

Plaintiff's assessment of the record, while not necessarily unreasonable, does not warrant remand. The issue is whether the ALJ's decision is supported by substantial evidence on the record, not whether the evidence could be interpreted differently. Here, the ALJ's decision not to afford Dr. Thompson's opinion controlling weight is supportable. An ALJ must provide "good reasons" for not adopting the opinion of a treating physician. 20 C.F.R. § 416.927(c)(2). In his explanation, outlined above, the ALJ provided the requisite good reasons.

The ALJ's reliance in part on the opinion of Dr. Holly is also supportable. Where a non-examining agency expert has reviewed the material evidence in the medical record, and the ALJ has rejected the relevant opinion of a treating source for "good reason," the

7

opinions of the agency expert about the claimant's RFC can constitute substantial evidence of a claimant's RFC. *Alazawy v. Colvin*, No. 2:16-cv-240-JHR, at *6 – 7 (D. Me. Dec. 26, 2016).

This Court has observed:

> There is no hard and fast rule requiring renewed evaluation by a consulting expert every time a disability claimant experiences new medical events or obtains new diagnoses in the interval between the initial DDS consultant's RFC assessment and the date of the administrative hearing. Particularly where pain is concerned, an Administrative Law Judge has the unenviable duty to make a credibility determination, 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4); SSR 96–7p, and the evidence contained in new medical records may, in some cases, simply dovetail with the credibility determination. Where the dividing line exists is difficult to determine and will depend on the particular facts of a case.

*Bachelder v. SSA Comm'r*, No. 1:09-cv-436-JAW, 2010 WL 2942689, at *6 (July 19, 2010), *report and recommendation adopted*, 2010 WL 3155151 (D. Me. Aug. 9, 2010). *See also Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." (citations and internal quotation marks omitted)).

Although the ALJ evidently did not adopt Dr. Holly's opinion in its entirety, given that Dr. Holly did not account for certain likely limitations associated with more severe, periodic migraines, Dr. Holly's assessment that Plaintiff's treatment with neurology and medication management would significantly improve Plaintiff's migraine symptoms (Ex.

4A, R. 84: "As the headaches becoming [sic] controlled under Neuro direction, they are anticipated to continue to improve") is sound particularly given PA Fahnestock's treatment records that reflect significant improvement in the control of Plaintiff's symptoms. (R. 15.)

In sum, the record evidence, including Dr. Holly's RFC opinion, PA Fahnestock's treatment records, and Plaintiff's report of symptoms and activity level,[3] constitute substantial evidentiary support for the ALJ's finding that Plaintiff has the residual functional capacity to meet the concentration, persistence, and pace demands of light work involving simple, routine tasks, not at a production pace, with no more than occasional public interaction, subject to the stated postural and environmental limitations. [4]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

---

[3] Plaintiff's contention that her ability to engage in work activity and activities of daily living is consistent with a finding of disability because her migraines are episodic is unpersusive. (Statement of Errors at 16 – 17.) Plaintiff's ability to engage in such activities suggests that the chronic, non-migraine headaches reported by Plaintiff are not disabling, and generates legitimate questions about the reliability of the entry on the physical RFC assessment form, signed by Dr. Thompson, that Plaintiff is disabled by "ongoing chronic daily headaches" that prevent her from, for example, lifting more than 20 pounds or standing for more than two hours in a workday. (Ex. 10F, R. 351 – 52.)

[4] Because the RFC finding is supportable on the record, Plaintiff's remaining argument concerning the vocational expert's testimony requires no further discussion. The vocational expert testified that two absences from work, per month, would not be tolerated. (R. 61, ECF No. 9-2.)

9

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 20th day of August, 2018.